**ORIGINAL**

IN THE SUPREME COURT FOR THE STATE OF MISSISSIPPI
CAUSE NO.: _____

IN RE: *JAMES R. BOBO*

IN THE MATTER OF:
STATE OF MISSISSIPPI, UPON CRIMINAL AFFIDAVIT BY EARNEST LEE

V.

JAMES R. BOBO, IN HIS CAPACITY AS AN INVESTIGATOR FOR MDOC

**FILED**
FEB 27 2017
OFFICE OF THE CLERK
SUPREME COURT
COURT OF APPEALS

2017-M-256

---

EMERGENCY PETITION FOR WRIT OF PROHIBITION AND/OR MANDAMUS
PROTECTION FROM COMPELLED TESTIMONY AT OWN PROBABLE CAUSE
HEARING & ADDITIONAL GROUNDS WARRANTING EXTRAORDINARY RELIEF

---

TO THE HONORABLE JUSTICE(S) OF THE SUPREME COURT:

### INTRODUCTION & OVERVIEW

Petitioner, James R. Bobo, ("Bobo") pursuant to Rule 21 of the Mississippi Rules of Appellate Procedure seeks extraordinary relief in the form of prohibition and/or mandamus against the State of Mississippi from conducting a probable cause hearing upon a writ compelling Petitioner to appear and give testimony at said proceeding, criminal in-nature and to direct the State from proceeding forward in derogation of preclusion doctrines and double jeopardy.

### FACTUAL BACKGROUND

1. James Bobo, Petitioner, ("Bobo") is classified as an Internal Affairs Coordinator who serves as an Investigator with the Criminal Investigations Division (CID) for the Mississippi Department of Corrections at the Mississippi State Penitentiary located in Parchman Mississippi.

2. In this capacity Bobo is entitled to statutory protections, as provided by the legislature such as a probable cause hearing when it is alleged Bobo violated Mississippi criminal statutes during the exercise of his duties as a peace officer for the State of Mississippi.

MOTION# 2017 759

3. Upon information and belief, there is a probable cause hearing set in the Circuit Court of Sunflower County on or about the 27th day of February, 2017. It is believed the following underlies the impending matter:

4. Earnest Lee ("Lee") is the Superintendent of the Mississippi State Penitentiary at Parchman. Recently, and while Bobo acted in compliance with MDOC administrative procedures, Lee filed a criminal charging affidavit against Bobo under an unspecified statute. It is believed that Lee's affidavit serves as the basis for the impending probable cause Hearing. A copy of same is attached hereto and incorporated herein as Exhibit 1.

5. On or about February 16, 2017 the Circuit Clerk's Office of Sunflower County issued a Writ to Bobo compelling his appearance at a probable cause hearing to testify for the State of Mississippi. Bobo is the Defendant. There are statutory penalties in the event of non-compliance. A copy of said writ is attached hereto and incorporated herein as Exhibit 2.

6. Previously, on or about January 9, 2017 MDOC Administration concluded an internal investigation on an ancillary matter related to the underlying criminal investigation wherein Bobo and others investigated an assault upon an inmate. A copy of the Memorandum is attached hereto and incorporated herein as Exhibit 3.

7. Bobo remains in his position, although there exists an affected liberty interest for which jeopardy has attached. According to the internal investigation, **Lee assaulted Bobo and another CID Investigator during their criminal investigation** and the Investigators for MDOC Administration found *no illegal or unethical wrong-doing by Bobo*. [*See,* Exhibit 3 at p.3]

8. Counsel for Bobo has attached a certificate denoting his attempts to resolve the matter without resorting to filing this Application. *See,* Exhibit 4.

## APPLICABLE LEGAL STANDARD & GROUNDS FOR WHICH EXTRAORDINARY RELIEF SHOULD BE GRANTED

9. Extraordinary remedy under Rule 21, such as prohibition protects Petitioner from the impending legal injury that is incurable on appeal. M.R.A.P. 21, *See generally, State v. Maples*, 402 So. 2d 350, 351 (Miss. 1981). The Court must grant extraordinary relief for two reasons: First, the writ issued by the Clerk of the Court inevitably violates Bobo's right from testifying at his own criminal proceeding. Second, the entire action is barred by preclusion doctrines and arguably double jeopardy.

### A. THE CONSTITUTION PROHIBITS COMPELLED TESTIMONY AT YOUR OWN CRIMINAL PROCEEDING.

10. The Constitutions of the United States and the State of Mississippi expressly prohibit the government from compelling one to testify one's own criminal prosecution. U.S. Const. Amend V & XIV, Miss. Const. Art. 3 § 26. Acknowledging there exists support the right may be waivable, Bobo is subject to statutory penalties for failing to give testimony at his own probable cause hearing, a proceeding criminal in-nature.

11. Accordingly, the first incurable legal injury for which there is no appellate remedy is the compulsory process requiring Bobo to appear and testify as a witness for the State at a probable cause hearing for which Bobo is identified as the Defendant and for which Bobo is entitled to administrative processes.

### B. PROSECUTION IS BARRED BY PRECLUSION DOCTRINES & DOUBLE JEOPARDY

12. Similarly, the prosecution and the impending matter to be addressed by the Circuit Court is precluded by res judicata and arguably barred by collateral estoppel. "Under Mississippi law, res judicata or collateral estoppel precludes re-litigation of administrative decisions." *E.g., Smith v. Univ. of Miss.*, 797 So.2d 956, 963 (Miss.2001). MDOC Administration has investigated the matter. Lee's affidavit stifles these basic doctrines as well as Bobo's interests to due process.

13. At its core, these rules preclude parties from re-litigating issues authoritatively decided on their merits in prior litigation to which they were parties or in privity. *See, Marcum v. Mississippi*

*Valley Gas Co., Inc.*, 672 So. 2d 730, 733 (Miss. 1996) (quoting) (*State ex rel. Moore v. Molpus*, 578 So.2d 624 (Miss.1991)). In *Goff*, the United States District Court observed: The law is clear that "when a state agency acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's fact-finding the same preclusive effect to which it would be entitled in the State's courts." *See, Goff v. Singing River Health System*, 6 F. Supp. 3d 704, 709 (S.D. Miss. 2014).

14. Here, and as provided in its report dated January 9, 2017 MDOC Administration concluded the matter after a thorough investigation, which included an interview with Earnest Lee and several others. MDOC closed the matter without further incident. [*Exhibit* 3 at P. 1] Jeopardy attaches at the time a liberty interest is restrained upon a particular set of facts. Accordingly, and in addition to the above-reasons, the State is barred from prosecution.

## RELIEF SOUGHT

WHEREFORE, Premises Considered, Bobo asks the Court to prohibit the State from conducting a probable cause hearing where it is clear the hearing is barred by the doctrine of collateral estoppel and for which the State has issued compulsory process requiring Bobo to waive his right from self-incrimination.

RESPECTFULLY SUBMITTED, THIS 27TH DAY OF FEBRUARY, 2017.

JAMES R. BOBO, PETITIONER
BY HIS ATTORNEYS

_____
Erich G. Jerscheid, Esq. (MSB#104982)
Erich G. Jerscheid, PLLC
Post Office Box 55874-3935
Jackson, Mississippi 39296
Office: (601) 914-2741
Facsimile: (601) 605-0447
ejerscheid@redjlaw.com

CERTIFICATE OF SERVICE

    I, Erich G. Jerscheid, certify that a copy of the above and foregoing was caused the 27th day of February, 2017 to be sent to the following via first class mail postage prepaid & as provided in the manner below:

<u>Hon. Corrie Cockrell, Legal Counsel:</u>
Mississippi Department of Corrections
633 N. State Street
Jackson, Mississippi 39202
**Via Email: ccockrell@mdoc.state.ms.us**

<u>Hon. Gary Austin, County Prosecutor</u>
Sunflower County, Mississippi
306 Main Street
Indianola, Mississippi 38751
**Via Email: <u>austingl@bellsouth.net</u>**

Earnest Lee, Superintendent
Mississippi State Penitentiary
Post Office Box 1057 - Hwy 49 West
Parchman, MS 38738
**Via Facsimile: (662) 745-8912**
**[Superintendent's Fax]**

<u>Hon. W. Ashley Hines</u>
4th Judicial Circuit District
Post Office Box 1315
Greenville, Mississippi 38702-1315
**Via Facsimile: (662)335-2381**

<u>RESPECTFULLY SUBMITTED,</u>
ERICH G. JERSCHEID, PLLC

_/s/ Erich Jerscheid_
Erich G. Jerscheid, Esq. (MSB#104982)
Erich G. Jerscheid, PLLC
Post Office Box 55874-3935
Jackson, Mississippi 39296
Office: (601) 914-2741
Facsimile: (601) 605-0447
ejerscheid@redjlaw.com
    *Attorney for Petitioner,*

IN THE SUPREME COURT FOR THE STATE OF MISSISSIPPI
CAUSE NO.: _____

IN RE: *JAMES R. BOBO*

IN THE MATTER OF:
STATE OF MISSISSIPPI, UPON CRIMINAL AFFIDAVIT BY EARNEST LEE

V.

JAMES R. BOBO, IN HIS CAPACITY AS AN INVESTIGATOR FOR MDOC

## PETITIONER'S EXHIBIT LIST

Petitioner, James R. Bobo, by and through his attorneys includes the following Exhibits in support of his Petition:

| No. | DOCUMENT | FILER/AUTHOR | DATE |
|---|---|---|---|
| 1 | Criminal Affidavit filed in Sunflower County | Earnest Lee, Superintendent | 02/08/17 |
| 2 | Clerk's Writ - State Witness Subpoena | Sunflower Co. Circuit Court Clerk | 02/16/17 |
| 3 | Memorandum – RE: MSP Altercation Involving Staff | Cole Terrell, Investigator, MDOC Administration | 01/09/17 |
| 4 | Attorney's Good-Faith Certification | Erich G. Jerscheid | 02/27/17 |

RESPECTFULLY SUBMITTED, THIS 27TH DAY OF FEBRUARY, 2017.

JAMES R. BOBO, PETITIONER
BY HIS ATTORNEYS

Erich G. Jerscheid, Esq. (MSB#104982)
Erich G. Jerscheid, PLLC
Post Office Box 55874-3935
Jackson, Mississippi 39296
Office: (601) 914-2741
Facsimile: (601) 605-0447
ejerscheid@redjlaw.com

# GENERAL AFFIDAVIT, CRIMINAL
(C. 99-25-1, 99-23-3)

**State of Mississippi**
**Sunflower County**

Before me _____Susan Holt_____, a Justice Court Judge/Clerk of said County in Justice District No. _____

Earnest Lee (704 Parchman Road 12, Parchman, MS 38738) makes affidavit that James Bibo (DOB: ▓/▓/▓▓; SSN: ▓▓▓▓▓▓▓▓▓), on or about the 21st day of Nov, A.D., 2016, in said County, in said Justice's District did purposely cause bodily injuries to me, (Earnest Lee, superintendent of Mississippi State Penitentiary) while performing my duties as superintendent by grabbing me a one point and running into me at another time while I was involved in a conversation with other staff

against the peace and dignity of the State of Mississippi _____
in violation of Section _____ of the Mississippi Code of 1972 as annonated.

x _Earnest Lee_

Sworn to and subscribed before me, this __8__ day of __February__, 2017.

_Susan Holt_
Justice Court Judge/Clerk

EXHIBIT **1**
p. **1** of **1**

STATE WITNESS SUBPOENA    CIRCUIT COURT    CAUSE NO. Unnumbered

STATE OF MISSISSIPPI

THE SHERIFF OF ANY COUNTY

You are hereby commanded to summon:

James Bobo
In Care of Mississippi Department of Corrections
Parchman, MS

if to be found in your County, to be and personally appear before the Circuit Court of the County of Sunflower in said State, at the COUNTY COURTHOUSE IN **SUNFLOWER COUNTY,** Mississippi, on the __27th__ day o f **February**, A.D., 2017 at **10.15 a.m.**, then and there to testify on behalf of **THE STATE OF MISSISSIPPI**, (at whose instance this writ is issued) in which James Bobo is defendant and that (he, she, they) in nowise fail to appear, under the penalty prescribed by the statue; and have there then this Writ.

Given under my hand and seal of said Court, and issued the 16th day of February, 2017.

CAROLYN P. HAMILTON, CIRCUIT CLERK
SUNFLOWER COUNTY, MISSISSIPPI

BY: _____ D.C.



EXHIBIT 2
p. 1 of 1



**STATE OF MISSISSIPPI**
DEPARTMENT OF CORRECTIONS
MARSHALL FISHER
COMMISSIONER



Sean K. Smith
Director

Corrections Investigation Division
(601) 359-5611 • 5688 (FAX)

# MEMORANDUM

**TO:** Sean K. Smith, Director, CID

**FROM:** Cole Terrell, Integrity Investigator, CID

**DATE:** January 9, 2017

**RE:** MSP Altercation Involving Staff

This memorandum pertains to an altercation that took place at the Mississippi State Penitentiary in Parchman, MS, on November 21, 2016. The altercation involved the Corrections Investigation Division, Officer Steven Tyler (Field Operations), as well as Administrative staff and the K9 Unit. The following is a list of parties involved and/or witnesses:

- John Rogers, CID Chief
- James Bobo, CID Investigator
- William Carter, CID Investigator
- Jimmie Gibbs, CID Investigator
- Jim Hunt, CID Investigator
- Steven Tyler, Field Operations Officer
- Earnest Lee, Superintendent
- Timothy Morris, Warden Unit 29
- Brenda Cox, Deputy Warden Unit 29
- Leather Williams, K9 Officer
- Kevin Gamble, K9 Officer
- Derrick Sanders, K9 Officer
- Kelvin Taylor, K9 Officer
- Tommy Hearon, K9 Officer
- Michael Scruggs, K9 Officer
- Larry Craig, K9 Officer

On November 22, 2016, Investigators from MDOC Central Office began conducting interviews with the above stated staff in an effort to decipher what took place on the prior evening. Initially, it was provided that there was an altercation between CID and Superintendent Lee whereas Supt. Lee and Inv. Bobo physically assaulted each other.

EXHIBIT 3
p. 1 of 4

After conducting interviews, investigators were able to determine Chief Rogers, Inv. Bobo, and Inv. Carter were interviewing Officer Tyler in reference to an officer on inmate assault (ref. case #16-MSP-971). During the course of the interview, investigators noted what appeared to be fresh dried blood on Officer Tyler's pants and scuff marks on his boots that would be indicative of the alleged physical altercation. In an effort to retrieve the evidence, the investigators detained Officer Tyler and he initially cooperated by stating that he would turn over his pants and boots to investigators. Chief Rogers exited the conference room and made a phone call to be sure a warrant was not needed. While Chief Rogers was out of the room, Officer Tyler got up from his seat and told Investigators Bobo and Carter that he was leaving. Investigators tried to inform him that he was not allowed to leave at which point Officer Tyler shoved Inv. Bobo from the doorway. Inv. Carter grabbed Officer Tyler and Inv. Bobo did as well. Chief Rogers entered the room and assisted the two investigators with restraining him at which point Warden Morris entered the doorway and gave verbal commands for him to stop resisting. Officer Tyler was placed in handcuffs and assisted to a chair.

At this point in the investigation, conflicting statements and reports were given as to what transpired after the detainment of Officer Tyler to include the physical altercation between Supt. Lee, CID, and K9. It was determined other individuals would need to be interviewed along with re-interviewing some of the initial staff for clarity. After doing so and through a thorough investigation as well as a small clip of audio recording from the incident, the following was concluded:

After the detainment of Officer Tyler, Chief Rogers requested the K9 Unit for security due to the fact another Field Operations Officer was in the building to be interviewed and investigators had already been physically involved with Officer Tyler. While awaiting their arrival, Chief Rogers spoke with Officer Tyler and through the course of the conversation, Officer Tyler stated that he would cooperate with surrendering his clothes. Furthermore, he wanted to retract his initial statement given to the investigators in which he denied his involvement in the officer on inmate assault.

While the conversation between CID and Officer Tyler was taking place, Warden Morris went to his office and contacted Supt. Lee to inform him there had been an altercation between CID and Officer Tyler. Supt. Lee requested to speak with Officer Tyler on the phone and Warden Morris entered the conference room to inform him of this. Chief Rogers informed Warden Morris that Officer Tyler was not leaving the room and he was under arrest for assaulting Inv. Bobo and Inv. Carter. Warden Morris went back to his office and informed Supt. Lee that Officer Tyler was not allowed to leave the room and he was under arrest. Supt. Lee then told Warden Morris to lock the unit down and not let anyone in or out and he would come to their location. Supt. Lee was also contacted in reference to sending K9 to the conference room to which he denied the request and stated he would call K9 to meet him at the unit.

Approximately 45 minutes later, Supt. Lee met the K9 unit at Unit 29. They entered the conference room and Supt. Lee immediately grabbed Officer Tyler by the left shoulder and stated "come on let's go." Chief Rogers stepped in front of Officer Tyler and put his hand on his shoulder preventing him from standing up and leaving. Chief Rogers told Supt. Lee that Officer Tyler was not going anywhere and he was a suspect in an investigation as well as under arrest for assaulting CID. A heated discussion ensued and Inv. Bobo reached out in the direction of Officer Tyler and Supt. Lee

Memorandum; MSP Physical Altercation Involving Staff
Page 3

as to gesture that Officer Tyler was not leaving. Supt. Lee grabbed Inv. Bobo by the wrist and Officer Scruggs, K9, grabbed Inv. Bobo yelling let him go to which Inv. Bobo informed him that he did not have Supt. Lee and Supt. Lee had hold of him. At that point, Supt. Lee let go of Inv. Bobo and Inv. Bobo began to audio record a few minutes of the events. Supt. Lee then began to speak to Officer Tyler and ask him questions about CID assaulting him. Inv. Bobo tried leaving the room and Supt. Lee blocked the door. Inv. Bobo then attempted to reach around Supt. Lee for the door and Supt. Lee could be heard saying "don't put your hands on me, cause I might have to put mines on you," to which Inv. Bobo responded, "you already did, remember?" Inv. Bobo, Chief Rogers, and Supt. Lee all exited the room after this to make phone calls to determine who was in the right. After numerous calls by Chief Rogers and Supt. Lee to supervisors, it was determined that Officer Tyler would turn over all of his clothing to CID and then would be allowed to depart and the incident would be sorted out the next day. Inv. Carter collected evidence from Officer Tyler and after retrieving it, Supt. Lee grabbed Officer Tyler once more and stated they were leaving. Chief Rogers and Inv. Bobo were in another office at this time. Inv. Carter stated that he didn't want to cause any trouble but could Supt. Lee and Officer Tyler wait for Chief Rogers' return to make certain they had everything they needed. Inv. Carter was leaning against the doorway at this point and Supt. Lee grabbed him by the wrist in an effort to remove him from the doorway. Inv. Bobo was exiting the office he had been in when he noticed this physical altercation taking place. He then went to separate Supt. Lee from Inv. Carter by extending his arm between the two when Supt. Lee turned around and slapped him with an open hand. Inv. Carter, Inv. Bobo and Supt. Lee were then grabbed and eventually separated by Inv. Gibbs and K9 officers. Investigators Bobo, Carter and Gibbs as well as Officer Tyler all were evaluated at Unit 42 by medical staff where no significant injuries were noted.

In conclusion, these key factors from the investigation were noted:

- CID was acting in a legal official capacity by interviewing Officer Tyler who initially consented to the encounter. Once possible evidence was noted on Officer Tyler, he was legally detained to preserve the integrity of the evidence.
- Officer Tyler attempted to exit the room failing to obey lawful commands by CID.
- Officer Tyler then assaulted Inv. Bobo by shoving him. He also resisted his arrest.
- Supt. Lee denied the request for K9 by Chief Rogers and then arrived with K9 nearly 45 minutes after they were requested which is a major safety concern.
- Supt. Lee attempted to remove Officer Tyler from the room upon his arrival potentially removing evidence as well as interfering with a law enforcement investigation.
- Supt. Lee then assaulted both Inv. Bobo and Inv. Carter by grabbing and pulling them by the wrist as well as by slapping Inv. Bobo.
- Investigators Carter and Bobo never touched Supt. Lee in a manner that was malicious nor could it be determined for sure if they touched him at all. This was noted by all witnesses who saw any physical contact between the parties.
- In this incident, it could not be determined that the CID Investigators did anything illegal or unethical. Also, it was noted that any actions taken by the investigators were in direct response to outside stimuli either from the officer under investigation or Supt. Lee.

**Erich Jerscheid**

| | |
|---|---|
| **From:** | Michael, Kendra N. <KNMichael@mdoc.state.ms.us> |
| **Sent:** | Thursday, February 23, 2017 8:51 AM |
| **To:** | Erich Jerscheid |
| **Cc:** | Cockrell, Corrie |
| **Subject:** | CID report |
| **Attachments:** | Corrections Investigation Report.pdf |

Good Morning Mr. Jerscheid,

Please see attachment regarding the above reference matter. If this office can be any further assistance please feel free to contact.

*Kendra Michael*
*Legal Department*
*Mississippi Department of Corrections*
*633 N. State Street*
*Jackson, MS 39202*
*Phone:(601) 359-5224*
*Fax:(601) 359-5735*
*KNMichael@mdoc.state.ms.us*

1

3-4

CERTIFICATION OF GOOD-FAITH IN FILING

Undersigned Counsel, Erich G. Jerscheid, Attorney for James R. Bobo, Petitioner provides the following:

1. That, the instant Petition is not filed for an improper purpose and results from being unable to previously resolve this matter with the State through Gary Austin, Prosecutor for Sunflower County. The instant Petition was filed after confirming certain matters with the appropriate state agencies and attempting to resolve same good-faith.

2. Being aware of the existence of a Memorandum tending to exonerate Petitioner, I had no independent basis to verify its authentication. On or about February 21, 2017 I conversed with the Hon. Corrie Cockrell, legal counsel for Mississippi Department of Corrections. I requested and received a copy of same a few days later without resorting to legal process.

3. Within a few hours of receiving said Memorandum from MDOC, I forwarded the same to the Hon. Gary Austin, County Prosecutor via email.

4. Later that day I had reason to believe, another individual who was familiar with these proceedings was informed by the Prosecutor that the proceedings dated February 27, 2017 were continued due to a request previously made by me in light of a scheduling conflict. My attempts to verify this information were unsuccessful.

5. Without a response to my email and with this information, I attempted four times to contact the Prosecutor telephonically on Friday February 24, 2017. Further, I contacted the Clerk of the Sunflower County Circuit Court and requested the status of these proceedings. According to the Clerk, the matter was docketed by write-in and set to proceed

This, 27th day of February, 2017.

_____
Erich G. Jerscheid, Esq. (MSB#104982)
Erich G. Jerscheid, PLLC
Post Office Box 55874-3935
Jackson, Mississippi 39296
Office: (601) 914-2741
Facsimile: (601) 605-0447
ejerscheid@redjlaw.com
*Attorney for Petitioner,*

EXHIBIT 4
p. 1 of 2

# Erich Jerscheid

**From:** Erich Jerscheid
**Sent:** Thursday, February 23, 2017 11:48 AM
**To:** 'austingl@bellsouth.net'
**Subject:** FW: CID report
**Attachments:** Corrections Investigation Report.pdf

Attorney Austin:

Attached to this email, please find the internal investigation by MDOC's Integrity Unit. In light of our previous conversation regarding this Memo, I ask for your consideration of whether a PC hearing is necessary. Please feel free to contact me to discuss the matter. Thank you for your time.

**From:** Michael, Kendra N. [mailto:KNMichael@mdoc.state.ms.us]
**Sent:** Thursday, February 23, 2017 8:51 AM
**To:** Erich Jerscheid <EJerscheid@redjlaw.com>
**Cc:** Cockrell, Corrie <CCockrell@mdoc.state.ms.us>
**Subject:** CID report

Good Morning Mr. Jerscheid,

Please see attachment regarding the above reference matter. If this office can be any further assistance please feel free to contact.

*Kendra Michael*
*Legal Department*
*Mississippi Department of Corrections*
*633 N. State Street*
*Jackson, MS 39202*
*Phone:(601) 359-5224*
*Fax:(601) 359-5735*
*KNMichael@mdoc.state.ms.us*

1

4-2

Erich G. Jerscheid, PLLC

**Via Hand-Delivery, C/O: State Capital Police**
**& Electronic Mail**
The Honorable Muriel Ellis, Clerk of the Court
Supreme Court of Mississippi &
Mississippi Court of Appeals
Post Office Box 249
Jackson, Mississippi 39205-0249

  RE: *In re: James R. Bobo, Petition for Extraordinary Relief*

February 27, 2017

Dear Madam Clerk:

  By cover of this letter, please find an original and four (4) copies of a Petition for Writs of Prohibition and/or Mandamus Protection from Compelled Testimony at Own Probable Cause Hearing & Additional Grounds Warranting Extraordinary Relief (w/ Exhibits).

  I humbly request it's priority consideration, although there remains some underlying confusion as to whether the Probable Cause Hearing is proceeding today (February 27, 2017) at the Sunflower County Circuit Court at 10:15 a.m.

  Thank you for your time. Please do not hesitate to contact me with any questions, concerns, and/or comments.

Very truly,<br>Erich G. Jerscheid

EGJ

Encl. (14 pps.)
cc: File
See Certificate of Service

**Hand-Receipt of Original & 4 Copies (w/ Exhibits) by State Capital Police**

Officer Name & Badge No.:_____

Date & Time:_____

# MISSISSIPPI STATE CAPITOL POLICE
Woolfolk Building
501 North West Street Suite 30001-A
Jackson, Mississippi 39201


To: Clerk of the Mississippi Supreme Court

From: Mississippi State Capitol Police

Date: 2/27/2017

Subject: After Hours Filings of Court Brief

Greetings:

On the above date at 0537 hours this Court Brief was delivered at our office at the New Capitol building by Erich G. Jeuscheid and then delivered to your office on the first floor of the Justice Facility.

Signature of Receiving Officer _____